**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE:                                          Case No.17-17495-LMI
                                                Chapter 7

ESSIE M RIGGINS,


       Debtor.

_____/

**PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC.'S**
**<u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>**

Paramount Residential Mortgage Group, Inc. ("Movant"), by and through undersigned counsel, files this *Motion for Relief from the Automatic Stay*, and in support states as follows:

1.      The Court has jurisdiction over this matter pursuant to 11 U.S.C. §362, Rule 4001(a) of the Federal Rules of Bankruptcy Procedure, and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.      On June 15, 2017, Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code.

3.      Debtor owns certain real property located at 20535 Marlin Road, Cutler Bay, Florida 33189 (the "Property") in Miami-Dade County, Florida, legally described as:

> **LOT 4, BLOCK 22, OF CUTLER RIDGE SECTION FOUR, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 60, PAGE 23, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA. A.P.N.: 36-6009-009-0990**

4.      The Property is secured by virtue of a Promissory Note and Mortgage dated May 2, 2014 in the original amount of $208,160.00, recorded in the Public Records of Miami-Dade County, Florida in Book **29170** at Page **4361-4369**. True and correct copies of the relevant loan documents are attached as Composite **Exhibit "A."**

5.      The Property has not been claimed exempt by Debtor. The Property has not been abandoned by the Trustee. Moreover, according to the Chapter 7 *Individual Debtor's Statement of Intentions*, Debtor is surrendering the Property.

6.    As of September 1, 2017, Debtor has failed to provide adequate protection to Movant by failing to make payments pursuant to the Mortgage since October 1, 2015. See *Affidavit in Support of Motion for Relief from Stay* attached as **Exhibit "B."**

7.    As of September 1, 2017, Movant has completed the *Indebtedness Worksheet*, wherein the total pre-petition indebtedness is $254,659.75 and the total post-petition indebtedness is $5,740.00. See *Indebtedness Worksheet* attached as **Exhibit "C."**

8.    The post-petition payment address is: 425 Phillips Boulevard, Ewing, NJ 08618.

9.    The estimated value of the property is $187,692.00. This valuation is based on the fair market value as determined by the Miami-Dade County Property Appraiser. See Miami-Dade County Property Appraisal attached as **Exhibit "D."** Thus, there is no equity in the property for the benefit of unsecured creditors of the estate.

10.    Movant's security interest in the Property is being significantly jeopardized by Debtor's failure to make regular payments under the subject loan documents while Movant is prohibited from pursuing lawful remedies to protect such security interest.

11.    Movant respectfully requests that the Court grant it relief from the automatic stay in this case pursuant to 11 U.S.C. §362(d)(1), for cause, namely the lack of adequate protection to Movant for its security interest in the subject property. The value of the collateral is insufficient in and of itself to provide adequate protection to Movant, which the Bankruptcy Code requires to be provided.

12.    Movant further requests that the Court Order entered pursuant to the instant Motion provide that all communications sent by Movant in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, be sent directly to Debtor.

13.    Pursuant to 11 U.S.C. §362(e), Movant hereby requests that in the event a hearing is necessary, that said hearing be held within thirty (30) days.

14.    Movant has incurred attorneys' fees in the amount of $931.00 and costs in the amount of $176.00 as a result of the necessity of filing this motion. Movant's attorneys' fees and costs are recoverable as part of the debt pursuant to the loan documents but shall not be a personal liability of Debtor.

15.    Movant respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure, so that Movant can pursue its in rem remedies without further delay.

**WHEREFORE**, Movant respectfully requests that the automatic stay be lifted so that Movant may be permitted to protect its security interest in Debtor's property outside of the bankruptcy forum, that in the event that a hearing is necessary on this Motion that it be held within thirty (30) days, that Movant's attorneys' fees and costs incurred in the filing of this motion be recoverable as part of the debt pursuant to the loan documents but shall not be a personal liability of Debtor,that the Court waive the fourteen (14) day stay, and for such further relief as the Court may deem just and proper.

Respectfully Submitted:

/s/ *Rachel L. Ahlum*
Rachel L. Ahlum, Bar No.: 91291
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: rahlum@aldridgepite.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion for Relief from the Automatic Stay was served electronically or via U.S. Mail, first-class postage prepaid, to:

**DEBTOR ATTORNEY**
**(via electronic notice)**
*None (Pro Se)*

**DEBTOR**
Essie M Riggins
26051 SW 130 Ave
Homestead, FL 33032

**TRUSTEE**
**(via electronic notice)**
Ross R Hartog
9130 S Dadeland Blvd # 1800
Miami, FL 33156
rhartog@mrthlaw.com

**UNITED STATES TRUSTEE**
**(via electronic notice)**
Office of the U.S. Trustee
USTPRegion21.MM.ECF@usdoj.gov

Dated: October 3, 2017

/s/ *Rachel L. Ahlum*
Rachel L. Ahlum, Bar No.: 91291
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: rahlum@aldridgepite.com

Composite Exhibit A

# NOTE

MAY 2, 2014          CORONA                    CALIFORNIA
[Date]                 [City]                       [State]

20535 MARLIN ROAD, CUTLER BAY, FLORIDA 33189
[Property Address]

## 1.  PARTIES

"**Borrower**" means each person signing at the end of this Note, and the person's successors and assigns.
"**Lender**" means  PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC., A
CALIFORNIA CORPORATION                          and its successors and assigns.

## 2.  BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of TWO
HUNDRED EIGHT THOUSAND ONE HUNDRED SIXTY AND 00/100
**Dollars (U.S. $** 208,160.00      ), plus interest, to the order of Lender.  Interest will be charged on unpaid
principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FIVE AND
000/1000                                    percent (      5.000 %)
per year until the full amount of principal has been paid.

## 3.  PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

## 4.  MANNER OF PAYMENT

(A) Time
Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning
on  JULY 1, 2014                          .  Any principal and interest remaining on the 1st     day of
JUNE, 2044                   , will be due on that date, which is called the "Maturity Date."

(B) Place
Payment shall be made at 1265 CORONA POINTE COURT, SUITE 301, CORONA,
CALIFORNIA 92879
, or at such other place
as Lender may designate in writing by notice to Borrower.

(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 1,117.45              .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.

FLORIDA - FHA FIXED RATE NOTE
FLFHA.NTE 05/01/08                    Page 1 of 3

DocMagic eForms
www.docmagic.com

Flfha.nte.xml

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

**5.  BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.  Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6.  BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                         percent (     4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest.  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default.  In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.  This Note does not authorize acceleration when not permitted by HUD regulations.  As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law.  Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.  WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require Lender to demand payment of amounts due.  "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

FLORIDA - FHA FIXED RATE NOTE
FLFHA.NTE 05/01/08                              Page 2 of 3

DocMagic *eForms*
www.docmagic.com

Flfha.nte.xml

Composite Exhibit A

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  Lender may enforce its rights under this Note against each person individually or against all signatories together.  Any one person signing this Note may be required to pay all of the amounts owed under this Note.

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_Essie Riggins_ _____ (Seal)          _____ (Seal)
ESSIE RIGGINS                  -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                    -Borrower


Loan Originator: JASON SARJI, NMLSR ID 374700
Loan Originator Organization: AAA CAPITAL FUNDING, INC. - FORT LAUDERDALE, FL, NMLSR ID 374739
Loan Originator Organization: PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC., NMLSR ID 75243

*[Sign Original Only]*

FLORIDA - FHA FIXED RATE NOTE
FLFHA.NTE  05/01/08                          Page 3 of 3                    DocMagic *EForms*
                                                                           www.docmagic.com

Flfha.nte.xml

Composite Exhibit A

**ALLONGE**

Loan Date: MAY 2, 2014

Borrower(s): ESSIE RIGGINS

Property Address: 20535 MARLIN ROAD, CUTLER BAY, FLORIDA 33189

Principal Balance: $208,160.00

PAY TO THE ORDER OF

Without Recourse

Company Name: PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC.

By: _____

Lori Miller
Director Loan Administration
(Title)

MULTISTATE NOTE ALLONGE
ALSR 02/18/09

DocMagic
www.docmagic.com

Composite Exhibit A

CFN 2014R0386355
OR Bk 29170 Pgs 4361 - 4369; (9pgs)
RECORDED 05/30/2014 08:34:00
MTG DOC TAX 728.70
INTANG TAX 416.32
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This Instrument Prepared By:
PLATINUM TITLE INSURERS, LLC
700 US HIGHWAY 1, SUITE C
NORTH PALM BEACH, FL 33408

After Recording Return To:
PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC.
1265 CORONA POINTE COURT
CORONA, CALIFORNIA 92879
Loan Number: 3254542286

Prepared by: Ariel Melender

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  MAY 2, 2014
The mortgagor is  ESSIE RIGGINS, A SINGLE WOMAN

("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee. **MERS is the nominee for Lender**, as hereinafter defined, and Lender's successors and assigns.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC., A CALIFORNIA CORPORATION   ("Lender")
is organized and existing under the laws of  CALIFORNIA
and has an address of  1265 CORONA POINTE COURT, SUITE 301, CORONA,
CALIFORNIA 92879
Borrower owes Lender the principal sum of  TWO HUNDRED EIGHT THOUSAND ONE HUNDRED
SIXTY AND 00/100                           Dollars (U.S. $ 208,160.00       ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  JUNE 1, 2044
This Security Instrument secures to Lender:  (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in  MIAMI-DADE                County, Florida:
LOT 4, BLOCK 22, OF CUTLER RIDGE SECTION FOUR, ACCORDING TO THE
PLAT THEREOF AS RECORDED IN PLAT BOOK 60, PAGE 23, OF THE PUBLIC
RECORDS OF MIAMI-DADE COUNTY, FLORIDA.
A.P.N.: 36-6009-009-0990

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA 07/03/12                              Page 1 of 9                         DocMagic EForms
                                                                                    www.docmagic.com

Flmtgz.fha.xml

Composite Exhibit A

which has the address of  20535 MARLIN ROAD

                                                        [Street]

          CUTLER BAY          , Florida     33189        ("Property Address"):

          [City]                                    [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

     **UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
     1.   **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
     2.   **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  07/03/12                         Page 2 of 9                         DocMagic *eForms*
                                                                                 www.docmagic.com

Flmtgz.fha.xml

Composite Exhibit A

in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
THIRD, to interest due under the Note;
FOURTH, to amortization of the principal of the Note; and
FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

DocMagic *eForms*
www.docmagic.com

Flmtgz.fha.xml

Composite Exhibit A

    **5.   Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control.  Borrower shall notify Lender of any extenuating circumstances.  Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted.  Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default.  Lender may take reasonable action to protect and preserve such vacant or abandoned Property.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence.  If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    **6.   Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument.  Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal.  Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments.  Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    **7.   Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2.  Borrower shall pay these obligations on time directly to the entity which is owed the payment.  If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

    If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

    Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument.  These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  07/03/12                        Page 4 of 9                             DocMagic *EForms*
www.docmagic.com

Flmtgz.fha.xml

Composite Exhibit A

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

   **(a)   Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

   (i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

   (ii)   Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   **(b)   Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

   (i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

   (ii)   The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

   **(c)   No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

   **(d)   Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

   **(e)   Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   60 DAYS
   from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS                             from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend

---

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  07/03/12                                    Page 5 of 9                                    DocMagic *ERama*
                                                                                                       *www.docmagic.com*

Flmtgz.fha.xml

Composite Exhibit A

time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note:  (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.  Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.  Governing Law; Severability.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15.  Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16.  Hazardous Substances.**  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances:  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.**  Borrower and Lender further covenant and agree as follows:

**17.  Assignment of Rents.**  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property.  Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.  However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and

Composite Exhibit A

receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.  This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower:  (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.  However, Lender or a judicially appointed receiver may do so at any time there is a breach.  Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18.  Foreclosure Procedure.  If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act.  Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

**19.  Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20.  Attorneys' Fees.**  As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**21.  Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  07/03/12

Page 7 of 9

DocMagic *EForms*
www.docmagic.com

Flmtgz.fha.xml

Composite Exhibit A

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Essie Riggins_ _____ (Seal)        _____ (Seal)
ESSIE RIGGINS                        -Borrower                          -Borrower
10337 SW 181st STREET, MIAMI,
FL 33157


_____ (Seal)        _____ (Seal)
                    -Borrower                          -Borrower


_____ (Seal)        _____ (Seal)
                    -Borrower                          -Borrower


Witness: _Jani Lee_                    Witness:
_JANGO SEE, NOTARY PUBLIC_        _____


FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  07/03/12                Page 8 of 9                DocMagic
                                                              www.docmagic.com

Flmtgz.fha.xml

OR BK 29170 PG 4369

Composite Exhibit A

—————————————— [Space Below This Line For Acknowledgment] ——————————————

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

    The foregoing instrument was acknowledged before me this _2nd_ day of _May, 2014_

by _ESSIE RIGGINS_ _____

_____

_____

who is personally known to me or who has produced _DRIVER'S LICENSE_
                                                      (Type of Identification)

as identification.

                                        JORGE SEE
                                        Notary Public - State of Florida
                                        My Comm. Expires Dec 26, 2017
                                        Commission # FF 066006

Signature

Name of Notary
JORGE SEE

Title
NOTARY PUBLIC

Serial Number, if any
FF 066006

(Seal)

Loan Originator: JASON SARJI, NMLSR ID 374700
Loan Originator Organization: AAA CAPITAL FUNDING, INC. - FORT LAUDERDALE, FL, NMLSR ID 374739
Loan Originator Organization: PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC., NMLSR ID 75243

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  07/03/12

Page 9 of 9

DocMagic *eForms*
www.docmagic.com

Flmtgz.fha.xml

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI

IN RE:                                                  Case No.17-17495-LMI
                                                        Chapter 7

ESSIE M RIGGINS,

            Debtor.
_____/

AFFIDAVIT IN SUPPORT OF
MOTION FOR RELIEF FROM AUTOMATIC STAY

STATE OF
COUNTY OF

            **BEFORE ME**, a notary public duly authorized to take acknowledgements and administer
oaths, on this day personally appeared _Eirg Miner_ after having been duly
cautioned and sworn under oath, deposes and states as follows:

            1.      I am making this Affidavit in connection with and in support of the *Motion for
Relief from Automatic Stay* filed by Paramount Residential Mortgage Group, Inc., a secured
creditor in the above-styled bankruptcy proceeding.

            2.      Cenlar FSB ("Cenlar FSB") services the loan for Paramount Residential Mortgage
Group, Inc. ("Movant"), the holder of the subject Note and Mortgage by way of assignment.

            3.      I am a _Bankruptcy Supervis_(Job Title) for Cenlar FSB. In said capacity, I
have access to Cenlar FSB's computerized account records and I have knowledge of the facts
stated herein. I make this affidavit with the knowledge, based on my review of the records of Cenlar
FSB, as they relate to the loan in this matter. The business records reviewed were made at or near the
time of the transactions described in them, by or from information transmitted by a person with
knowledge of the transactions. These records are kept in the course of Cenlar FSB's regularly conducted
business activities, and it is Cenlar FSB's regular practice to make and keep such records.

            4.      I have authority to make this affidavit.  Further, I make this Affidavit based on the
business records obtained therein.

            5.      I am familiar with the loan made on May 2, 2014 by Paramount Residential
Mortgage Group, Inc., a California Corporation to Essie M Riggins in the original principal
amount of $208,160.00 ("the Loan"), which is the basis for Movant's secured status. The
property located at 20535 Marlin Road, Cutler Bay, Florida 33189 (the "Property").

Exhibit B

Affidavit of Indebtedness
Case No. 17-17495-LMI

6.    Cenlar FSB maintains a computerized account of the Loan including all receipts and disbursements, charges, and credits.

7.    The amount of indebtedness and the nature and extent of default set forth in the *Motion for Relief from Automatic Stay* is derived from the computerized account of the Loan.

8.    As of September 1, 2017, the Note and Mortgage payments are in default as Debtor, Essie M Riggins, is contractually due for the October 1, 2015, payment, and has failed to timely meet and satisfy the payment requirements with respect to the obligations set forth in the Note.

9.    As of September 1, 2017, on examination of these business records, it is determined that there is now due and owing upon the Note and Mortgage and outstanding principal balance of $204,296.81, plus advances made, attorneys' fees and costs, and interest accruing thereon in accordance with the loan documents.

10.    This Affidavit is signed under penalty of perjury as being true and correct based on the business records of Cenlar FSB and Movant's books and business records, and is intended to show that there is available competent testimony which can be introduced at evidentiary hearing if necessary.

**FURTHER AFFIANT SAYETH NAUGHT.**

AFFIANT

STATE OF: NEW JERSEY
COUNTY OF: MERCER

The foregoing instrument was sworn before me this 29th day of SEPTEMBER , 2017 by GINA MINER , who is known to me and who did take an oath.

NOTARY PUBLIC

My Commission Expires: 4-1-20

MARK NAPRAWA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires April 1, 2020
ID# 2452162

Exhibit B

# CORPORATE RESOLUTION

The undersigned hereby certifies that he/she is the duly elected Secretary of Paramount Residential Mortgage Group, Inc., a corporation existing under the laws of the State of California (the "Company"), and further certifies that the following are true copies of resolutions duly adopted by the Board of Directors of the Company effective as of the Effective Date of Resolution set forth below, that remain in full force and effect and do not conflict with the governing documents of Company.

BE IT RESOLVED that those employees of Cenlar FSB ("Cenlar") listed below (the "Document Executing Officers") are hereby authorized in furtherance of a certain Subservicing Agreement between Cenlar and the Company dated as of September 25, 2015 (the "Subservicing Agreement"):

    a. to execute and (where required by law or custom) to attest, acknowledge and record:

        1. requests for delivery of custodial mortgage loan documents, reconveyances, substitutions of trustees, discharges releases and satisfactions of deeds of trust, trust deeds, mortgage and security deeds (each a "Security Instrument");

        2. notes, or other debt instruments upon payment in full;

        3. partial releases of collateral encumbered by any Security Instrument,

        4. modifications and/or extensions of so-called "balloon reset" mortgages

        5. modifications of notes and Security Instruments upon the prior written approval of the Company;

        6. substitutions of trustees, pleadings, notices, deeds and other instruments necessary to institute, continue or complete foreclosure of loans;

        7. all documents, including all deeds and conveyances necessary to effect the sale and/or liquidation of a mortgaged property;

        8. any documents or instruments necessary for the offer, listing, closing of sale, and conveyance of a property acquired by Company or an investor by foreclosure or other process, including but not limited to, grant, warranty, quit claim and statutory deeds or similar instruments of conveyance;

        9. any documents or instruments in connection with any bankruptcy or receivership of an obligor or mortgagor on a loan;

        10. all necessary documents to file claims with insurers on behalf of Company with respect to the mortgage loans or other assets;

        11. the power to indorse instruments required to effectuate mortgage loan payments, refunds or disbursement of insurance or other miscellaneous proceeds, such as checks evidencing such payments, refunds or proceeds; and

        12. with the prior written approval of Company any and all other related instruments and documents;

    b. to declare defaults with respect to a mortgage loan or other asset;

    c. to give notices of intention to accelerate and of acceleration and any other notices as reasonably necessary or appropriate;

{6287/00040950.DOCX  9/25/2015}

d.  to post all notices as required by law and the loan documents, including the debt instrument and the instruments securing a loan in order to foreclose or otherwise enforce the Security Instruments;

e.  pursue appropriate legal action and conduct the foreclosure or other form of sale and/or liquidation, issue bidding instructions with respect to such sale;

f.  to conduct eviction or similar dispossessory proceedings;

g.  to take possession of collateral on behalf of Company or an investor;

h.  to file suit and prosecute legal actions against all parties liable for amounts due under a loan, including but not limited to, any deficiency amounts due following foreclosure or other acquisition or disposition of an asset;

i.  to assign, convey, accept, or otherwise transfer the interest in any asset on behalf of Company;

j.  to take such other actions and exercise such rights which may be taken by Company on behalf of investors or custodians with respect to any mortgage loan or other asset, including but not limited to, realization upon all or any part of a loan or any collateral therefor or guaranty thereof; and

k.  to take any such actions and execute such documents as may be necessary to fulfill Cenlar's obligations to investors and Owner/Servicer under the Subservicing Agreement

This authorization shall last the length of time as the Document Executing Officers individually are employed at Cenlar. The authorization is at the convenience and pleasure of Company and is revocable upon notice. Further, the authority of the aforesaid individuals is specifically and strictly limited to the purpose stated above. If not revoked sooner, such officer status shall terminate upon the transfer or termination of an individual from a position requiring these services;

BE IT FURTHER RESOLVED that the Document Executing Officers appointed shall be titled as Vice President and Assistant Secretary, for the purpose of enacting the above; and

BE IT FURTHER RESOLVED that the Document Executing Officers authorized hereby are:

Jeanne Bader

Michael Blair

Patricia Bracey

Robin Brodsky

Francine Bryant

Lauren Cromer

Kathleen D'Amore

Jennifer Dobron

Marianne Doroba

James Dunmeyer

Meredith Gillespie

Kim Hagen

Nancy Irwin

Mark Kelbaugh

Steven Kravitz

Jacqueline Lenarski

Donna J. Lynch

Joanne P. McGrath

David J. Miller Jr

Angela Pulli

Krista Radwanski

Hallie Richards

Robert Weis

{6287/00040950.DOCX. 9/25/2015}

Exhibit B

Effective Date of Resolution:    September 29/2015

By:    Robert Holliday
Title:    Secretary/COO

{6287/00040950.DOCX. 9/25/2015}

Exhibit B

# INDEBTEDNESS
# WORKSHEET

## DEBT AS OF THE PETITION
## DATE (*As of* June 1, 2017)

A.    **Total pre-petition indebtedness of debtor(s) to movant (if movant is not the lender, this refers to the indebtedness owed to the lender) as of petition filing date: $254,659.75**

1.  Amount of principal: $204,296.81

2.  Amount of interest: $17,876.04

3.  Amount of escrow (taxes and insurance): $24,495.21

4.  Amount of forced placed insurance expended by movant: $_____

5.  Amount of attorneys' fees billed to debtor(s) pre-petition: $_____

6.  Amount of pre-petition late fees, if any, billed to debtor(s): $ 178.50

7.  Any additional pre-petition fees, charges or amounts charged to debtors/debtors account and not listed above:
Other fees due: $32.50
Recoverable balance: $7,780.39

B.    **Contractual interest rate: 5.000%**

404-FL Southern-V1

Exhibit C

### AMOUNT OF ALLEGED POST-PETITION DEFAULT
#### (AS OF 8/11/2017)

C.    Date last payment was received:  N/A

D.    Alleged total number of payments due postpetition from filing of petition through payment due on August 1, 2017: Two (2).

E.    All post-petition payments alleged to be in default:

| Alleged Amount Due Date | Alleged Amount Due | Amount Received | Amount Applied To Principal | Amount Applied To Interest | Amount Applied To Escrow | Late Fee Charged (if any) |
|---|---|---|---|---|---|---|
| 7.1.17 | $2,870.00 | | | | | |
| 8.1.17 | $2,870.00 | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Totals: | $5,740.00 | $ | $ | $ | $ | $ |

F.    Amount of movant's attorneys fees billed to debtor for the preparation, and filing and prosecution of this motion: $931.00

G.    Amount of movant's filing fee for this motion: $176.00

H.    Other attorneys' fees billed to debtor post-petition: $0.00

I.    Amount of movant's post-petition inspection fees: $0.00

J.    Amount of movant's post-petition appraisal broker's price opinion: $0.00

K.    Amount of forced placed insurance or insurance provided by the movant post-petition: $0.00

L.    Sum held in suspense by movant in connection with this contract, if applicable: 0.00

M.    Amount of other post-petition advances or charges, for example taxes, insurance incurred by debtor etc. (itemize each charge): $0.00

404-FL Southern-V1

Exhibit C



# OFFICE OF THE PROPERTY APPRAISER

## Summary Report

Generated On : 8/18/2017

| Property Information | |
|---|---|
| Folio: | 36-6009-009-0990 |
| Property Address: | 20535 MARLIN RD<br>Cutler Bay, FL 33189-2423 |
| Owner | ESSIE RIGGINS |
| Mailing Address | 20535 MARLIN RD<br>CUTLER BAY, FL 33189 USA |
| PA Primary Zone | 0100 SINGLE FAMILY - GENERAL |
| Primary Land Use | 0101 RESIDENTIAL - SINGLE FAMILY : 1 UNIT |
| Beds / Baths / Half | 3 / 2 / 0 |
| Floors | 1 |
| Living Units | 1 |
| Actual Area | 1,880 Sq.Ft |
| Living Area | 1,594 Sq.Ft |
| Adjusted Area | 1,654 Sq.Ft |
| Lot Size | 8,250 Sq.Ft |
| Year Built | 1956 |



| Assessment Information | | | |
|---|---|---|---|
| Year | 2017 | 2016 | 2015 |
| Land Value | $82,500 | $66,000 | $55,688 |
| Building Value | $104,202 | $105,690 | $98,843 |
| XF Value | $990 | $1,007 | $814 |
| Market Value | $187,692 | $172,697 | $155,345 |
| Assessed Value | $159,717 | $156,432 | $155,345 |

| Benefits Information | | | | |
|---|---|---|---|---|
| Benefit | Type | 2017 | 2016 | 2015 |
| Save Our Homes Cap | Assessment Reduction | $27,975 | $16,265 | |
| Homestead | Exemption | $25,000 | $25,000 | $25,000 |
| Second Homestead | Exemption | $25,000 | $25,000 | $25,000 |
| Senior Homestead | Exemption | $50,000 | $50,000 | $50,000 |

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

| Short Legal Description |
|---|
| 4 & 9 56 40 |
| CUTLER RIDGE SEC 4 PB 60-23 |
| LOT 4 BLK 22 |
| LOT SIZE 75.000 X 110 |
| OR 19978-2595 102001 1 |

| Taxable Value Information | | | |
|---|---|---|---|
| | 2017 | 2016 | 2015 |
| **County** | | | |
| Exemption Value | $100,000 | $100,000 | $100,000 |
| Taxable Value | $59,717 | $56,432 | $55,345 |
| **School Board** | | | |
| Exemption Value | $25,000 | $25,000 | $25,000 |
| Taxable Value | $134,717 | $131,432 | $130,345 |
| **City** | | | |
| Exemption Value | $100,000 | $100,000 | $100,000 |
| Taxable Value | $59,717 | $56,432 | $55,345 |
| **Regional** | | | |
| Exemption Value | $50,000 | $50,000 | $50,000 |
| Taxable Value | $109,717 | $106,432 | $105,345 |

| Sales Information | | | |
|---|---|---|---|
| Previous Sale | Price | OR Book-Page | Qualification Description |
| 05/02/2014 | $212,000 | 29170-4360 | Qual by exam of deed |
| 03/28/2013 | $80,000 | 28582-4429 | Qual by exam of deed |
| 02/12/2010 | $100 | 27188-3161 | Corrective, tax or QCD; min consideration |
| 02/12/2010 | $100 | 27188-3160 | Corrective, tax or QCD; min consideration |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

Exhibit D